# DAVID O'SULLIVAN *v.* ALAN F. HAUGHT
## (SC 20722)

Robinson, C. J., and McDonald, D'Auria, Mullins and Ecker, Js.

*Syllabus*

The plaintiff, the decedent's only child, sought to recover damages from the defendant, the decedent's second husband, for, inter alia, tortious interference with the plaintiff's expected inheritance from the decedent's estate. The decedent had executed a will that left her entire estate to the defendant and expressly disinherited the plaintiff. After the decedent's death, the defendant applied to have that will admitted to probate in the Probate Court. The plaintiff contested the will on various grounds, including undue influence, but the Probate Court rejected those claims and admitted the will to probate. The plaintiff appealed from the Probate Court's decree to the Superior Court, where the appeal was to take the form of a trial de novo pursuant to statute (§ 45a-186). While the probate appeal was pending, the plaintiff filed the present action, which the trial

O'Sullivan *v.* Haught

court consolidated with the probate appeal. Thereafter, the defendant moved for summary judgment in the tort action, claiming, inter alia, that the plaintiff's claims were barred by the doctrines of res judicata and collateral estoppel. The trial court, however, denied the motion for summary judgment as to the count alleging tortious interference with the plaintiff's expected inheritance, concluding that the doctrine of collateral estoppel was inapplicable because the plaintiff did not have an adequate opportunity to fully litigate that claim in the Probate Court. The defendant appealed to the Appellate Court from the trial court's partial denial of his motion for summary judgment. The Appellate Court dismissed the appeal for lack of subject matter jurisdiction, concluding that there was no appealable final judgment. On the granting of certification, the plaintiff appealed to this court.

*Held* that the Appellate Court improperly dismissed the defendant's appeal from the trial court's partial denial of the defendant's motion for summary judgment, and, because the trial court properly rejected the defendant's collateral estoppel claim, albeit on different grounds, this court reversed the Appellate Court's judgment and remanded the case to that court with direction to affirm the trial court's denial of the defendant's motion for summary judgment as to the tortious interference with an expected inheritance claim and to direct the trial court to conduct further proceedings:

It is well established, and the plaintiff conceded, that a trial court's denial of a motion for summary judgment may constitute an immediately appealable final judgment when it is based on the ground of collateral estoppel or res judicata, and, because the defendant in the present case established a colorable claim that the plaintiff's tortious interference with an expected inheritance claim was barred by the doctrine of collateral estoppel, the Appellate Court improperly dismissed the appeal for lack of jurisdiction.

Specifically, there was an identity of the issues between the proceedings in the Probate Court and the trial court, insofar as both the plaintiff's complaint in the tort action and her challenge to the will in the Probate Court relied on the defendant's allegedly undue influence over the decedent when the decedent created her will, the plaintiff's presentation of the undue influence issue to the Probate Court involved a contested evidentiary hearing and posttrial briefs, and the undue influence issue was actually decided by the Probate Court and necessary to the Probate Court's decree, insofar as that court was required to make a finding as to whether the defendant had exerted undue influence over the decedent in order to determine the will's validity.

Although this court, having found that the Appellate Court improperly dismissed the defendant's appeal for lack of jurisdiction, ordinarily would reverse the Appellate Court's judgment and remand the case to that

348 Conn. 625 MARCH, 2024 627

O'Sullivan *v.* Haught

court for consideration of the merits of the appeal, in the present case, it was preferable for this court to consider the merits of the collateral estoppel issue in the first instance pursuant to its supervisory authority over the administration of justice because the record was adequate for review, the issue presented a pure question of law, and the parties briefed the issue and had the opportunity to address it during oral argument.

Addressing the merits of the appeal, this court determined that the present case was governed by its recent decision in *Barash* v. *Lembo* (348 Conn. 264), in which it held that an appeal, such as a probate appeal, that is conducted as a trial de novo suspends the preclusive effect of the underlying judgment or decree for purposes of the preclusion doctrines, and concluded that, because the defendant's probate appeal was pending in the Superior Court and was to be tried de novo, the probate decree did not have a preclusive effect as to the plaintiff's tortious interference with an expected inheritance claim.

This court explained that the Probate Court's decision regarding the plaintiff's undue influence claim had no force in the probate appeal because the trial court, sitting as a Probate Court and conducting a trial de novo, would admit or preclude evidence, make factual findings, and arrive at its own conclusion with respect to the undue influence claim without regard to the Probate Court's findings or rulings, and, therefore, the Probate Court decree did not contain the necessary attributes of finality to warrant application of the doctrine of collateral estoppel.

Moreover, although the trial court properly rejected the defendant's collateral estoppel claim and correctly concluded that the probate decree had no preclusive effect, this court emphasized that the trial court's ultimate conclusion that the doctrine of collateral estoppel did not apply because the Probate Court did not have jurisdiction over the tortious interference with an expected inheritance claim was incorrect, and, instead, the probate decree had no preclusive effect because the issue of undue influence could not be determined with finality until the completion of the probate appeal in the form of a trial de novo.

(*Two justices dissenting in one opinion*)

Argued September 13, 2023—officially released March 12, 2024

*Procedural History*

Action to recover damages for, inter alia, tortious interference with an expected inheritance, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Sheridan, J.*, denied in part the defendant's motion for summary judgment, and the defendant appealed to the Appellate Court,

O'Sullivan *v.* Haught

which granted the plaintiff's motion to dismiss the appeal, and the defendant, on the granting of certification, appealed to this court. *Reversed*; *judgment directed*; *further proceedings*.

*Kirk D. Tavtigian*, with whom, on the brief, was *Peter J. Alter*, for the appellant (defendant).

*Jesse A. Mangiardi*, with whom was *John L. Bonee III*, for the appellee (plaintiff).

*Opinion*

ROBINSON, C. J. In this certified appeal, we consider the scope of an appellate court's jurisdiction over an interlocutory appeal from the denial of a motion for summary judgment on the ground of collateral estoppel that is based on the preclusive effect of a Probate Court decree. The defendant, Alan F. Haught, appeals, upon our grant of his petition for certification,[1] from the Appellate Court's dismissal of his appeal from the trial court's denial of his motion for summary judgment with respect to the claim of tortious interference with an expected inheritance brought in a tort action by the plaintiff, David O'Sullivan. Specifically, the defendant claims that the Appellate Court improperly granted the motion to dismiss his appeal because a trial court's denial of a summary judgment motion based on a colorable claim of collateral estoppel is an immediately appealable final judgment. We agree with the defendant and conclude that the Appellate Court improperly dismissed the defendant's appeal from the decision of the trial court.

Reaching the merits of the defendant's collateral estoppel claim pursuant to our supervisory powers over the

---

[1] We granted the defendant's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly dismiss, for lack of subject matter jurisdiction, the defendant's appeal from the trial court's denial of the defendant's motion for summary judgment based on collateral estoppel?" *O'Sullivan* v. *Haught*, 343 Conn. 930, 281 A.3d 1187 (2022).

O'Sullivan *v.* Haught

administration of justice, and guided by our recent decision in *Barash* v. *Lembo*, 348 Conn. 264, 303 A.3d 577 (2023), we also conclude that, because there is an appeal pending in the trial court from the decree of the Glastonbury-Hebron Probate Court (Probate Court), which is in the form of a trial de novo, the probate decree does not have a preclusive effect on the issue of undue influence in the plaintiff's tortious interference with an expected inheritance claim. Accordingly, we remand the case to the Appellate Court with direction to affirm the trial court's denial of summary judgment as to count three of the complaint on the ground of collateral estoppel.

The record reveals the following relevant facts and procedural history. The underlying case involves a probate dispute over the will of Stephanie B. Haught (decedent), between the plaintiff, the decedent's only child, and the defendant, the decedent's second husband. In 2013, the decedent revoked a preexisting will that had left her entire estate to the plaintiff and executed a new will (2013 will). The 2013 will named the defendant as the decedent's sole beneficiary and expressly disinherited the plaintiff. Following the decedent's death in 2017, the defendant applied to have the 2013 will admitted to probate in the Probate Court. The plaintiff contested the 2013 will, claiming, among other things, that the defendant had exercised undue influence over the decedent in the creation of the 2013 will by isolating her from her family and friends and by tricking her into naming the defendant as her sole beneficiary. The Probate Court, following a contested evidentiary hearing and posttrial briefs, found "no evidence to support a finding that the decedent was not exercising her own free will in altering her estate plan" and admitted the 2013 will to probate. The plaintiff appealed from the decree of the Probate Court to the trial court. That appeal remains pending before the trial court and will

O'Sullivan *v.* Haught

be heard as a trial de novo pursuant to General Statutes § 45a-186.

While the probate appeal was pending, the plaintiff also filed a separate tort action in the trial court that asserted three claims: (1) the inter vivos transfer of the decedent's assets to the defendant was invalid because of the defendant's undue influence, (2) the inter vivos transfer of the decedent's assets to the defendant was invalid because of the defendant's breach of his fiduciary duty, and (3) the defendant had tortiously interfered with the plaintiff's expected inheritance. The trial court subsequently consolidated the probate appeal with the tort action.

The defendant filed a motion for summary judgment in the tort action, claiming, among other things, that the plaintiff's claims were barred by the doctrines of res judicata and collateral estoppel. The trial court granted the defendant's motion for summary judgment as to counts one and two on the ground of res judicata but denied the motion as to count three, alleging tortious interference with the plaintiff's expected inheritance. With respect to the third count, the trial court concluded that the doctrines of res judicata and collateral estoppel were inapplicable because the plaintiff did not have an adequate opportunity to fully litigate the interference with an expected inheritance claim in the Probate Court.

The defendant appealed from the trial court's partial denial of his motion for summary judgment to the Appellate Court, claiming that the trial court improperly had denied his motion for summary judgment as to count three, alleging tortious interference with an expected inheritance. In a summary order, the Appellate Court subsequently granted the plaintiff's motion to dismiss the defendant's appeal for lack of subject matter jurisdiction on the ground that there was no appealable

O'Sullivan *v.* Haught

final judgment. The defendant then filed a motion for reconsideration en banc, which the Appellate Court denied, also by summary order. This certified appeal followed. See footnote 1 of this opinion.

With respect to the certified question, the defendant claims that the Appellate Court improperly dismissed his appeal because it is well established that a trial court's denial of a motion for summary judgment, when based on the ground of collateral estoppel, is an immediately appealable final judgment. See, e.g., *Santorso* v. *Bristol Hospital*, 308 Conn. 338, 346 n.7, 63 A.3d 940 (2013) ("[w]hen the decision on a motion for summary judgment . . . is based on the doctrine of collateral estoppel, the denial of that motion does constitute a final judgment for purposes of appeal" (internal quotation marks omitted)); *Convalescent Center of Bloomfield, Inc.* v. *Dept. of Income Maintenance*, 208 Conn. 187, 194, 544 A.2d 604 (1988) ("we view the issue of collateral estoppel as ripe for immediate appellate review"); *Girolametti* v. *Michael Horton Associates, Inc.*, 173 Conn. App. 630, 647–48, 164 A.3d 731 (2017) ("Although, as a general matter, this court . . . has jurisdiction to hear appeals [only] from final judgments, there are particular circumstances in which we may hear an appeal from an otherwise interlocutory judgment. The trial court's denial of a motion for summary judgment raising a claim of res judicata or collateral estoppel presents such an instance."), aff'd, 332 Conn. 67, 208 A.3d 1223 (2019). In response, the plaintiff concedes that this court has concluded that the denial of a motion for summary judgment on the ground of collateral estoppel can be an appealable final judgment. Nevertheless, he argues that, because the defendant cannot prevail on the merits of his collateral estoppel claim, the Appellate Court's dismissal of the defendant's appeal was ultimately proper.

O'Sullivan *v.* Haught

We begin our analysis by setting forth the legal principles that govern our review of the certified question. Because an appellate court's jurisdiction over appeals is prescribed by statute, specifically, General Statutes § 52-263,[2] "we must always determine the threshold question of whether the appeal is taken from a final judgment . . . ." *State* v. *Curcio*, 191 Conn. 27, 30, 463 A.2d 566 (1983). "[W]e have recognized that limiting appeals to final judgments serves the important public policy of minimizing interference with and delay in the resolution of trial court proceedings." (Internal quotation marks omitted.) *Smith* v. *Supple*, 346 Conn. 928, 937, 293 A.3d 851 (2023). Although the "subject matter jurisdiction of our appellate courts is limited by statute to appeals from final judgments . . . the courts may deem interlocutory orders or rulings to have the attributes of a final judgment . . . ." (Internal quotation marks omitted.) *Blakely* v. *Danbury Hospital*, 323 Conn. 741, 745, 150 A.3d 1109 (2016). In *Curcio*, we determined that there are two circumstances in which an otherwise interlocutory order is appealable under § 52-263, namely, "(1) [when] the order or action terminates a separate and distinct proceeding, or (2) [when] the order or action so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio*, supra, 31. Relevant here is the second prong of the *Curcio* test, which "boils down to whether, as a practical and policy matter, not allowing an immediate appeal will create irreparable harm insofar as allowing

---

[2] General Statutes § 52-263 provides: "Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict, except in small claims cases, which shall not be appealable, and appeals as provided in sections 8-8 and 8-9."

O'Sullivan *v.* Haught

the litigation to proceed before the trial court will—in and of itself—function to deprive a party of that right.'' *Halladay* v. *Commissioner of Correction*, 340 Conn. 52, 62–63, 262 A.3d 823 (2021). ''The second prong of the *Curcio* test focuses on the nature of the right involved. It requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the [party] irreparably harmed unless they may immediately appeal. . . . Thus, a bald assertion that the defendant will be irreparably harmed if appellate review is delayed until final adjudication . . . is insufficient to make an otherwise interlocutory order a final judgment. One must make at least a colorable claim that some recognized statutory or constitutional right is at risk.'' (Internal quotation marks omitted.) *Smith* v. *Supple*, supra, 940.

''It is well established that [a] colorable claim is one that is superficially well founded but that may ultimately be deemed invalid . . . . For a claim to be colorable, the defendant need not convince the trial court that he necessarily will prevail; he must demonstrate simply that he *might* prevail.'' (Emphasis in original; internal quotation marks omitted.) Id., 961; see, e.g., *State* v. *Curcio*, supra, 191 Conn. 36 (''[u]ndoubtedly, [when] defendants make a colorable claim that a trial court proceeding subjects them to double jeopardy, they are entitled to have this challenge heard on appeal before trial''). ''[O]ur examination of whether a colorable claim exists focuses on the plausibility of the appellant's challenge . . . when the pleadings and motion are viewed in light of the relevant legal principles.'' *In re Santiago G.*, 325 Conn. 221, 233, 157 A.3d 60 (2017).

In considering whether the defendant can demonstrate the existence of a colorable claim that the plaintiff's claim of tortious interference with an expected inheritance is barred by collateral estoppel as a result

O'Sullivan *v.* Haught

of the probate decree, we must consider the scope of the doctrine of collateral estoppel. "The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . .

"An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is *necessarily determined* if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent [on] the determination of the issue, the parties may relitigate the issue in a subsequent action. . . . Before collateral estoppel applies [however] there must be an *identity of issues* between the prior and subsequent proceedings. To invoke collateral estoppel the issues sought to be litigated in the new proceeding must be *identical* to those considered in the prior proceeding. . . . Further, an overlap in issues does not necessitate a finding of identity of issues for the purposes of collateral estoppel." (Citations omitted; emphasis in original; internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti*, 328 Conn. 726, 739–40, 183 A.3d 611 (2018).

We conclude that the defendant has established a colorable claim that the issue of undue influence in the plaintiff's tortious interference with an expected inheritance claim was fully and fairly litigated in the will contest proceeding before the Probate Court, and that there was an identity of the issues between the two proceedings. With respect to identity of the issues, both the complaint in the tort action and the challenge to the 2013 will in the Probate Court rely on the allegedly

O'Sullivan *v.* Haught

undue influence of the defendant over the decedent in the creation of the 2013 will. The plaintiff presented his case regarding undue influence to the Probate Court, which included a contested evidentiary hearing and posttrial briefs. Further, the issue of undue influence was actually decided and necessary to the judgment of the Probate Court. In order to determine the validity of the 2013 will, the Probate Court was required to make a finding as to whether the defendant had exerted undue influence over the decedent in the course of her making the 2013 will. The Probate Court admitted the will to probate after finding that the plaintiff had failed to sustain his burden of proof as to, among other things, undue influence. We, therefore, conclude that the defendant has raised a colorable claim that the plaintiff's claim of tortious interference with an expected inheritance is barred by the doctrine of collateral estoppel. Because the defendant has raised a colorable claim, the Appellate Court incorrectly concluded that it lacked subject matter jurisdiction over the defendant's appeal from the trial court's denial of summary judgment as to count three of the plaintiff's complaint, alleging tortious interference with an expected inheritance.

Ordinarily, our conclusion that the Appellate Court improperly dismissed an appeal for lack of subject matter jurisdiction would result in a reversal of the Appellate Court's judgment and a remand to that court for consideration of the merits of the appeal. See, e.g., *Pryor* v. *Brignole*, 346 Conn. 534, 546, 292 A.3d 701 (2023). Although the certified question in this appeal contemplates only the subject matter jurisdiction of the Appellate Court, we may, in the interest of judicial economy, invoke our supervisory powers, pursuant to Practice Book § 60-2, to address issues outside the scope of the certified question, rather than remand the case to the Appellate Court for consideration of those issues in the first instance. See, e.g., *Meadowbrook Center, Inc.* v.

O'Sullivan *v.* Haught

*Buchman*, 328 Conn. 586, 605 n.9, 181 A.3d 550 (2018) (addressing claim beyond scope of certified question in interest of judicial economy); *State* v. *James*, 261 Conn. 395, 410–12, 802 A.2d 820 (2002) (same). The exercise of our supervisory power is appropriate when the record is adequate to allow review of the merits, the parties have briefed the issues, and there is an opportunity to address the issue at oral argument. See, e.g., *Finan* v. *Finan*, 287 Conn. 491, 498, 949 A.2d 468 (2008). "Invocation of our supervisory powers [when] appropriate . . . carries the benefit of avoid[ing] the necessity of inordinate further delay . . . ." (Internal quotation marks omitted.) *State* v. *James*, supra, 411.

This case is a paradigmatic example of one in which it is preferable for us to consider the merits of the appeal in the first instance pursuant to our supervisory powers, rather than to remand the case to the Appellate Court. In the present case, the record is adequate for our review of the trial court's denial of the defendant's motion for summary judgment on the ground of collateral estoppel, which presents a pure question of law. Both parties dedicated significant portions of their respective briefs to this court to the merits of the collateral estoppel issue and had the opportunity during oral argument to address the merits. Accordingly, we conclude that, in the interest of judicial economy, the exercise of our supervisory power is appropriate in this case. We now turn to the merits of the collateral estoppel issue.

The defendant argues that the tortious interference with an expected inheritance claim is founded on the same undue influence issue that was fully litigated in the Probate Court. Relying on *Satti* v. *Rago*, 186 Conn. 360, 364–65, 441 A.2d 615 (1982), he contends that, because the probate decree, which contains no finding of undue influence, has not been reversed or modified, it remains in full force, and the doctrine of collateral

O'Sullivan *v.* Haught

estoppel must apply. The plaintiff argues in response that, pursuant to the Appellate Court's decision in *In re Probate Appeal of Cadle Co.*, 152 Conn. App. 427, 440, 100 A.3d 30 (2014), although the probate decree remains in full force until it is modified or reversed by the trial court, the decree cannot have preclusive effect because the probate appeal is tried de novo, and all matters of fact and law are subject to de novo review. If the court applies collateral estoppel despite the de novo appeal, the plaintiff claims, the entire purpose of de novo review would be eliminated. Guided by our recent decision in *Barash* v. *Lembo*, supra, 348 Conn. 264, we agree with the plaintiff and conclude that the probate decree does not have preclusive effect with respect to the plaintiff's tortious interference with an expected inheritance claim.

Generally, a Probate Court decree is a final judgment for purposes of collateral estoppel. See, e.g., *Solon* v. *Slater*, 345 Conn. 794, 809, 287 A.3d 574 (2023); *Heussner* v. *Day, Berry & Howard, LLP*, 94 Conn. App. 569, 576, 893 A.2d 486, cert. denied, 278 Conn. 912, 899 A.2d 38 (2006). This court consistently has held that a pending appeal does not deprive a Probate Court order, judgment, or decree of finality for purposes of collateral estoppel. See *Barash* v. *Lembo*, supra, 348 Conn. 278. Indeed, the mere act of appealing from a Probate Court decree to the Superior Court "does not in and of itself vacate or suspend the decree." *Kerin* v. *Stangle*, 209 Conn. 260, 265, 550 A.2d 1069 (1988). The Probate Court decree remains in full force until it is modified or set aside on appeal. Id.

"An appeal from a Probate Court to the Superior Court [however] is not an ordinary civil action. . . . When entertaining an appeal from an order or decree of a Probate Court, the Superior Court takes the place of and sits as the court of probate. . . . In ruling on a probate appeal, the Superior Court exercises the pow-

O'Sullivan *v.* Haught

ers, not of a constitutional court of general or [common-law] jurisdiction, but of a Probate Court.'' (Internal quotation marks omitted.) *Salce* v. *Cardello*, 348 Conn. 90, 103, 301 A.3d 1031 (2023). "Although the Superior Court may not consider events transpiring after the Probate Court hearing; *Satti* v. *Rago*, [supra, 186 Conn. 369]; it may receive evidence that could have been offered in the Probate Court, whether or not it actually was offered.'' *Gardner* v. *Balboni*, 218 Conn. 220, 225, 588 A.2d 634 (1991). Under § 45a-186, "if a record, including a transcript, of the testimony was made before the Probate Court pursuant to [General Statutes] §§ 51-72[3] and 51-73,[4] the Superior Court shall review the decree of the Probate Court using an abuse of discretion standard.'' (Footnotes added.) *Andrews* v. *Gorby*, 237 Conn. 12, 16, 675 A.2d 449 (1996); see also *In re Probate Appeal of Harris*, 214 Conn. App. 596, 600–601, 282 A.3d 467 (discussing more limited standard of review for appeals taken from matter heard on record in Probate Court), cert. denied, 345 Conn. 918, 284 A.3d 299 (2022). When "no record was made of the probate proceedings," however, "the Superior Court [is] required to undertake a de novo review of the Probate Court's decision.'' (Internal quotation marks omitted.) *Salce* v. *Cardello*, supra, 104. In conducting a trial de novo in an appeal from a Probate Court decree, the Superior Court must arrive at "an independent determination, without regard to the result reached by the [P]robate [C]ourt.'' *Prince* v. *Sheffield*,

[3] General Statutes § 51-72 provides in relevant part: "Whenever, in any court of probate, the parties or their attorneys so agree in writing, the judge of the court may call in a competent and disinterested person who is capable to act as a stenographer to act as the official stenographer in the whole or in such portion of the cause or matter as may be agreed upon. . . .''

[4] General Statutes § 51-73 provides in relevant part: "Evidence taken by any such stenographer shall have the same effect and be evidence to the same extent as evidence taken by the official court reporter of the Superior Court. Appeals from any decision rendered in any case after a record is made under this section and section 51-72, shall be on such record and shall not be a trial de novo.''

O'Sullivan *v.* Haught

158 Conn. 286, 299, 259 A.2d 621 (1969). That is, the trial court decides a de novo probate appeal "as an original proposition unfettered by, and ignoring, the result reached in the [P]robate [C]ourt." Id., 298.

Our recent decision in *Barash* v. *Lembo*, supra, 348 Conn. 264, governs our conclusion with respect to the preclusive effect of a Probate Court decree that is the subject of a pending de novo probate appeal. In *Barash*, we considered, for the first time, whether the requirement of a trial de novo in a pending appeal from an order, judgment, or decree of the Probate Court renders inapplicable the doctrines of res judicata and collateral estoppel as to probate decrees. Id., 279. That case concerned the proper administration of the residue of a decedent's estate, which had been bequeathed to a trust. Id., 269–70. The plaintiffs, who included the beneficiaries of the trust, alleged that the defendant had breached her fiduciary duty as trustee by failing to, among other things, investigate the alleged misconduct of the executor of the estate. Id. A prior Probate Court decree, however, rejected the plaintiffs' claims that the executor had breached his fiduciary duty to the estate. Id., 276. The plaintiffs appealed from the decree of the Probate Court, which was scheduled for a trial de novo. Id., 277. We considered whether, although the appeal from the decree denying the petition to remove the executor was pending, the Probate Court's rejection of the allegations against the executor precluded the plaintiff from relitigating the same misconduct issues in a separate action. Id.

In *Barash*, we adopted the rule applied by the federal courts, namely, "that an appeal that is conducted as a trial de novo suspends the preclusive effect of the underlying judgment." Id., 279; see id., 284; see also *In re Parmalat Securities Litigation*, 493 F. Supp. 2d 723, 737 (S.D.N.Y. 2007) ("[T]he pendency of an appeal ordinarily does not suspend the preclusive effect of an oth-

O'Sullivan *v.* Haught

erwise final judgment. But there is an exception for situations in which the appeal actually involves a trial de novo.'' (Footnote omitted.)), aff'd sub nom. *Bondi* v. *Capital & Finance Asset Management S.A.*, 535 F.3d 87 (2d Cir. 2008). Our reasons for adopting this approach are set forth in *Barash*. ''[W]hen an appeal requires a trial de novo pursuant to . . . § 45a-186, the appellant is entitled to relitigate the issues that were addressed by the Probate Court without regard to the factual findings or legal conclusions there obtained. . . . Although the Superior Court may not consider events transpiring after the Probate Court hearing . . . it may receive evidence that could have been offered in the Probate Court, whether or not it actually was offered. . . . [T]he Superior Court possesses the same discretionary power as that exercised by the Probate Court, which the Superior Court must exercise in arriving at an independent determination, without regard to the result reached by the [P]robate [C]ourt.'' (Citations omitted; internal quotation marks omitted.) *Barash* v. *Lembo*, supra, 348 Conn. 281–82. Accordingly, we concluded that, because a Probate Court decree carries no force on appeal, such a decree ''should not be accorded outcome determinative, preclusive effect in different litigation while that appeal is pending.'' Id., 284.

Pursuant to the rule that we adopted in *Barash*, we conclude that the pending appeal from the Probate Court to the trial court in the present case, which will be tried de novo, strips the Probate Court decree of any preclusive effect that it may otherwise have had on the subsequent action for tortious interference with an expected inheritance. Hypothetically, during the de novo appeal, the plaintiff could present new evidence of the defendant's allegedly undue influence, if it existed at the time of the original probate hearing, even if that particular evidence was not presented at the original hearing. See *Gardner* v. *Balboni*, supra, 218 Conn. 225.

O'Sullivan *v.* Haught

If that new evidence leads the trial court to conclude that the defendant exercised undue influence over the decedent when she created the 2013 will, the trial court need not consider the Probate Court's finding before coming to that conclusion. The trial court could also conclude that the defendant had exercised undue influence with no new evidence from the plaintiff. Put differently, the decision of the Probate Court regarding the plaintiff's undue influence claim has no force in that probate appeal. Because the trial court, sitting as a probate court, will admit or preclude evidence, make factual findings, and arrive at its own conclusion with respect to the undue influence claim without according any force to the Probate Court's findings or rulings, "we cannot say that the Probate Court decree contains the necessary attributes of finality to warrant application of collateral estoppel." *Barash* v. *Lembo*, supra, 348 Conn. 282.

Finally, although we conclude that the trial court properly rejected the defendant's collateral estoppel claim, we emphasize that we reach our conclusion on the basis of different reasoning. The trial court's analysis with respect to its denial of the defendant's motion for summary judgment as to count three on the ground of collateral estoppel is inconsistent with our recent decision in *Solon* v. *Slater*, supra, 345 Conn. 794. In *Solon*, we considered the scope of the preclusive effect of an *unappealed* Probate Court decree. Id., 798. As in this case, the plaintiff in *Solon* contended that her tortious interference with an expected inheritance claims were not barred by the doctrine of collateral estoppel because the Probate Court lacked jurisdiction to adjudicate the tort claims. See id., 807–808. We concluded in *Solon* that it "is not uncommon that issue preclusion will be asserted in an action over which the court rendering the prior judgment would not have had subject matter jurisdiction" and that, "[i]n such circumstances, there

O'Sullivan *v.* Haught

is no reason why preclusion should not apply if the procedures followed in the two courts are comparable in quality and extensiveness, and the first court was fully competent to render a determination of the issue on which preclusion is sought.'' (Internal quotation marks omitted.) Id., 824–25. Although the trial court is ultimately correct that the probate decree should have no preclusive effect, the trial court's conclusion that the doctrine of collateral estoppel did not apply because the Probate Court did not have jurisdiction over the tortious interference with an expected inheritance claim is incorrect. Instead, the probate decree has no preclusive effect because the issue of undue influence will not be determined with finality until the completion of the probate appeal, which takes the form of a trial de novo.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the trial court's denial of the defendant's motion for summary judgment as to count three of the plaintiff's complaint and to remand the case to the trial court for further proceedings.

In this opinion McDONALD and ECKER, Js., concurred.

D'AURIA, J., with whom MULLINS, J., joins, dissenting. The judgments of the Appellate Court and the majority of this court take different routes, but both arrive at the virtually identical destination: the tortious interference claim brought by the plaintiff, David O'Sullivan, in the third count of his complaint is permitted to go forward. I agree with the outcome. It is a fair question to ask, then, why I would bother to dissent from the majority's holding. My reasons are twofold, and both, I believe, are important to the proper functioning of our appellate system beyond this case. The first

348 Conn. 625 MARCH, 2024 643

O'Sullivan *v.* Haught

involves the determination (almost always made in the Appellate Court in the first instance) of whether otherwise interlocutory appeals qualify as "final judgments," specifically, whether a prompt decision can be made that there is or is not a final judgment and, therefore, whether the appeal must be dismissed for lack of appellate jurisdiction or whether the appeal will advance to merits briefing, oral argument, and a considered opinion. In my view, the Appellate Court properly dismissed the appeal by the defendant, Alan F. Haught, for failing to raise a colorable claim of a final judgment for the same reason the majority rejects the defendant's collateral estoppel claim on the merits: the Probate Court decree was not final and binding. I am also concerned with the majority's invocation of this court's supervisory authority over the administration of justice to address the defendant's appeal on its merits because the plaintiff failed to properly present the issue for our determination, and neither party was given an opportunity to specifically brief that issue.

To recap, the trial court denied the defendant's motion for summary judgment on the third count of the plaintiff's complaint, concluding that the doctrines of res judicata and collateral estoppel did not apply because the plaintiff did not have an adequate opportunity to fully litigate his interference with an expected inheritance claim in the prior Probate Court proceeding. The defendant appealed from that ruling. The plaintiff moved to dismiss the defendant's appeal for lack of a final judgment, and the Appellate Court, without opinion,[1] granted the motion and dismissed the appeal.

[1] The Appellate Court's order simply provided: "Granted." It is worth noting that the plaintiff based his motion to dismiss on a different ground (identity of issues) than both I and the majority address here (final and binding judgment). It is to me very doubtful that the Appellate Court dismissed the appeal on the identity of issues ground because, as the majority correctly concludes, it is clear that there was an identity of issues between the two proceedings. Rather, as I will discuss, my confidence is high that the Appellate Court dismissed the appeal for lack of a final judgment based

O'Sullivan *v.* Haught

Upon our grant of certification, a majority of this court today reverses the Appellate Court's judgment of dismissal because "a trial court's denial of a summary judgment motion based on a colorable claim of collateral estoppel is an immediately appealable final judgment."[2] Applying this standard, the majority holds that the defendant's appeal raises a "colorable claim" that "the issue of undue influence in the plaintiff's tortious interference with an expected inheritance claim was fully and fairly litigated in the will contest proceeding before the Probate Court, and that there was an identity of the issues between the two proceedings," and, therefore, there was a final judgment for purposes of appeal.[3] See, e.g., *Convalescent Center of Bloomfield, Inc.* v. *Dept. of Income Maintenance*, 208 Conn. 187, 194–95, 544 A.2d 604 (1988); see also *Santorso* v. *Bristol Hospital*, 308 Conn. 338, 346 n.7, 63 A.3d 940 (2013).

on a correct application of our law that the Probate Court decree lacked sufficient finality to make it preclusive for purposes of collateral estoppel. Understanding fully that the Appellate Court, as the " 'workhorse' " of our appellate system; *Georges* v. *OB-GYN Services, P.C.*, 335 Conn. 669, 701, 240 A.3d 249 (2020) (*D'Auria, J.*, concurring in part and dissenting in part); disposes of hundreds upon hundreds of motions each year, while this court rules on only a fraction of that number, providing a brief explanation of the Appellate Court's rationale—even a sentence or two, or even simply a case citation—can go a long way toward dispelling any uncertainty about the basis for the Appellate Court's action, perhaps obviating the need for any appeal to or review by this court.

[2] Although we require a ground of appeal to be "colorable" for appellate jurisdiction to attach in other types of interlocutory appeals; see, e.g., *Smith* v. *Supple*, 346 Conn. 928, 929–30, 293 A.3d 851 (2023) (special motion to dismiss pursuant General Statutes § 52-196a); *Markatos* v. *Zoning Board of Appeals*, 346 Conn. 277, 283 and n.6, 288 A.3d 1024 (2023) (denial of motion to intervene); *Dorfman* v. *Smith*, 342 Conn. 582, 594, 271 A.3d 53 (2022) (immunity); *State* v. *Bornstein*, 196 Conn. App. 420, 426, 229 A.3d 1097 (2020) (double jeopardy); I am not aware of any cases applying this standard in the collateral estoppel context, but I accept the majority's determination to apply it in the present case.

[3] Although it is indeed well established law in this court, it is not well established in the federal courts that a ruling denying the application of res judicata or collateral estoppel is immediately appealable. See *Strazza Building & Construction, Inc.* v. *Harris*, 346 Conn. 205, 211 n.2, 288 A.3d 1017 (2023).

Instead of simply reversing the Appellate Court's judgment of dismissal and directing that, on remand, the appeal proceed to briefing and argument on the merits in that court, the majority invokes this court's supervisory authority and, in the name of "judicial economy," cuts to the chase, reaches the merits and disposes of the defendant's collateral estoppel defense. Specifically, the majority holds that, although the defendant's appeal raised a "colorable" claim that the Appellate Court had jurisdiction over his appeal, because, generally, we have held that rulings denying the application of res judicata or collateral estoppel are immediately appealable, the appeal ultimately lacks merit because, like the federal courts, we have held "that an appeal that is conducted as a trial de novo suspends the preclusive effect of the underlying judgment," and, therefore, a Probate Court decree "should not be accorded outcome determinative, preclusive effect in different litigation while that appeal is pending." *Barash* v. *Lembo*, 348 Conn. 264, 279, 284, 303 A.3d 577 (2023).

I appreciate the salutary efforts of the majority, having decided that the Appellate Court indeed had jurisdiction over the appeal, to resolve this appeal with a modicum of dispatch because, while the defendant has pursued this appeal, the plaintiff's case on the merits of his third count awaits trial. Nonetheless, my disagreement with the way the majority has resolved this certified appeal is twofold.

First, I would credit the Appellate Court with knowing full well that, in general, a trial court's denial of a summary judgment motion based on a colorable claim of collateral estoppel is an immediately appealable final judgment. See footnote 2 of this opinion; see also *Lighthouse Landings, Inc.* v. *Connecticut Light & Power Co.*, 300 Conn. 325, 328 n.3, 15 A.3d 601 (2011); *Convalescent Center of Bloomfield, Inc.* v. *Dept. of Income Maintenance*, supra, 208 Conn. 194. I assume that the Appellate

O'Sullivan *v.* Haught

Court was drawing a different conclusion about the defendant's appeal, something other than the proposition from *Convalescent Center of Bloomfield, Inc*. Specifically, I would also credit the Appellate Court with knowing full well that black letter law requires that the preclusive effect of the doctrine of collateral estoppel applies only to final, valid judgments. See, e.g., *Independent Party of CT—State Central* v. *Merrill*, 330 Conn. 681, 714–15, 200 A.3d 1118 (2019). Although the majority in the present case relies heavily on our recent decision in *Barash* for its conclusion, the principle we applied in that case (that, because the Probate Court ruling was subject to a de novo appeal, there was no finality of judgment) is not a concept so new or extraordinary that the Appellate Court could not have easily relied on it for its determination to dismiss the appeal. Therefore, for the same reasons that the majority holds that the defendant's appeal in this case fails on the merits, I would conclude that the defendant's appeal fails to raise a colorable claim of a final judgment. I am rather confident that is the reason the Appellate Court dismissed the defendant's appeal. If I am mistaken about that having been the court's basis for dismissing the appeal, I would nonetheless affirm the judgment of dismissal. See *Alves* v. *Giegler*, 348 Conn. 364, 394, 306 A.3d 455 (2024); *Connecticut Dermatology Group, P.C.* v. *Twin City Fire Ins. Co.*, 346 Conn. 33, 40–41, 288 A.3d 187 (2023).

Second, even if I agreed that the Appellate Court erroneously dismissed the defendant's appeal, I would resist the temptation to invoke our supervisory authority to resolve the merits of that appeal, as the majority does in the present case, even though the rationale for doing so appears obvious to us. " 'The exercise of our supervisory powers is an extraordinary remedy' "; *In re Ivory W.*, 342 Conn. 692, 734, 271 A.3d 633 (2022); that we invoke "only in the rare circumstance [in which]

. . . traditional protections are inadequate to ensure the fair and just administration of the courts.'' (Internal quotation marks omitted.) *In re Aisjaha N.*, 343 Conn. 709, 724, 275 A.3d 1181 (2022). Several reasons convince me that this is not a case in which I would use our sparingly employed supervisory authority to reach an issue not otherwise before the court.

Primarily, upon our grant of certification, the plaintiff could have put the merits issue before us properly by filing a statement of alternative grounds for affirmance under Practice Book § 84-11 (b) and then have briefed the merits (i.e., the nonjurisdictional question). Moreover, because the plaintiff did not present the question as he should have, I am not as confident as the majority, which cites *Finan* v. *Finan*, 287 Conn. 491, 949 A.2d 468 (2008), and indicates that the defendant will not be prejudiced by the majority's resolution of the appeal ''[b]ecause both parties have briefed the issue and it was addressed at oral argument before this court . . . .'' (Internal quotation marks omitted.) Id., 498. In fact, the defendant's counsel mentioned several times at oral argument that, if we were inclined to reverse the Appellate Court's judgment of dismissal and reach the merits, he would be eager to submit a brief on the merits. Only under circumstances in which no party is prejudiced should we invoke our supervisory authority in such a way. See id. (court can exercise discretion to consider question outside scope of certified question only if both sides have had opportunity to brief issue); see also *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 162, 84 A.3d 840 (2014); *State* v. *Benjamin*, 299 Conn. 223, 232, 9 A.3d 338 (2010). Finally, even if I were not concerned about whether it is appropriate to exercise our supervisory authority to reach the merits in the present case, I am concerned about arguably similar cases in which we do not exercise our supervisory

O'Sullivan *v.* Haught

authority to reach alternative issues that we have not certified or that a party has not briefed. See, e.g., *Smith* v. *Supple*, 346 Conn. 928, 930, 293 A.3d 851 (2023) ("[b]ecause the defendants' appeal presents such a colorable claim, we transfer the appeal back to the Appellate Court for further proceedings according to law"); *Diaz* v. *Commissioner of Correction*, 335 Conn. 53, 60–61, 225 A.3d 953 (2020) (remanding case to Appellate Court so that it may decide, following briefing by parties, how best to proceed). Although it is not apparent whether we have an established standard for when we should be reaching and resolving issues instead of remanding the case to the Appellate Court for resolution, it is obvious to me that the Appellate Court is the best venue for the resolution of the merits of this appeal.

Accordingly, I respectfully dissent and would affirm the Appellate Court's judgment.